FILED
JUL 1 6 2024
MARY C. LOEWENGUTH, CLERK
WESTERN DISTRICT OF NY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

AMY P.,

               Plaintiff,

-v-

COMMISSIONER OF SOCIAL SECURITY,

               Defendant.

22-CV-06044-MJR
DECISION AND ORDER

Pursuant to 28 U.S.C. §636(c), the parties consented to have a United States Magistrate Judge conduct all proceedings in this case. (Dkt. No. 12)

Plaintiff Amy P.[1] ("Plaintiff") brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner" or "defendant") denying her application for Disability Insurance Benefits ("DIB") pursuant to the Social Security Act (the "Act"). Both parties have moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the following reasons, Plaintiff's motion (Dkt. No. 8) is denied, and defendant's motion (Dkt. No. 10) is granted.

---

[1] In accordance with the District's November 18, 2020, Standing Order, plaintiff is identified by first name and last initial.

## BACKGROUND[2]

Plaintiff filed for DIB on March 2, 2020, with an alleged onset date of January 10, 2007. (Administrative Transcript ["Tr."] 13, 104-09).  The claim was initially denied on June 23, 2020, (Tr. 125-30), and upon reconsideration on December 9, 2020. (Tr. 133-38). Plaintiff filed a timely request for an administrative hearing before an administrative law judge ("ALJ").  (Tr. 145-58).  On June 7, 2021, a telephone hearing was held by ALJ John P. Costello, during which Plaintiff participated, with counsel.  (Tr. 29-62).  A vocational expert ("VE") also testified at the hearing.  The ALJ issued an unfavorable decision on June 29, 2021.  (Tr. 10-28).  The Appeals Council denied Plaintiff's request for review on December 9, 2021.  (Tr. 1-6).  This action followed.

## DISCUSSION

I.    *Scope of Judicial Review*

The Court's review of the Commissioner's decision is deferential.  Under the Act, the Commissioner's factual determinations "shall be conclusive" so long as they are "supported by substantial evidence," 42 U.S.C. §405(g), that is, supported by "such relevant evidence as a reasonable mind might accept as adequate to support [the] conclusion," *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted).  "The substantial evidence test applies not only to findings on basic evidentiary facts, but also to inferences and conclusions drawn from the facts."  *Smith v. Colvin*, 17 F. Supp. 3d 260, 264 (W.D.N.Y. 2014).  "Where the Commissioner's decision

_____

[2] The Court presumes the parties' familiarity with Plaintiff's medical history, which is summarized in the moving papers.

rests on adequate findings supported by evidence having rational probative force," the Court may "not substitute [its] judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002). Thus, the Court's task is to ask "'whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached' by the Commissioner." *Silvers v. Colvin*, 67 F. Supp. 3d 570, 574 (W.D.N.Y. 2014) (quoting *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)).

Two related rules follow from the Act's standard of review. The first is that "[i]t is the function of the [Commissioner], not [the Court], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983). The second rule is that "[g]enuine conflicts in the medical evidence are for the Commissioner to resolve." *Veino*, 312 F.3d at 588. While the applicable standard of review is deferential, this does not mean that the Commissioner's decision is presumptively correct. The Commissioner's decision is, as described above, subject to remand or reversal if the factual conclusions on which it is based are not supported by substantial evidence. Further, the Commissioner's factual conclusions must be applied to the correct legal standard. *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008). Failure to apply the correct legal standard is reversible error. *Id.*

II.    *Standards for Determining "Disability" Under the Act*

A "disability" is an inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 42 U.S.C. §§423(d)(1)(A), 1382c(a)(3)(A). The Commissioner may find the claimant disabled "only if his physical or mental impairment

or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." *Id.* §§423(d)(2)(A), 1382c(a)(3)(B). The Commissioner must make these determinations based on "objective medical facts, diagnoses or medical opinions based on these facts, subjective evidence of pain or disability, and . . . [the claimant's] educational background, age, and work experience." *Dumas v. Schweiker*, 712 F.2d 1545, 1550 (2d Cir. 1983) (first alteration in original) (quoting *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981)).

To guide the assessment of whether a claimant is disabled, the Commissioner has promulgated a "five-step sequential evaluation process." 20 C.F.R. §§404.1520(a)(4), 416.920(a)(4). First, the Commissioner determines whether the claimant is "working" and whether that work "is substantial gainful activity." *Id.* §§404.1520(b), 416.920(b). If the claimant is engaged in substantial gainful activity, the claimant is "not disabled regardless of [his or her] medical condition or . . . age, education, and work experience." *Id.* §§404.1520(b), 416.920(b). Second, if the claimant is not engaged in substantial gainful activity, the Commissioner asks whether the claimant has a "severe impairment." *Id.* §§404.1520(c), 416.920(c). To make this determination, the Commissioner asks whether the claimant has "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." *Id.* §§404.1520(c), 416.920(c). As with the first step, if the claimant does not have a severe impairment, he or she is not disabled regardless of any other factors or considerations. *Id.*

§§404.1520(c), 416.920(c).  Third, if the claimant does have a severe impairment, the Commissioner asks two additional questions:  first, whether that severe impairment meets the Act's duration requirement, and second, whether the severe impairment is either listed in Appendix 1 of the Commissioner's regulations or is "equal to" an impairment listed in Appendix 1.  *Id.* §§404.1520(d), 416.920(d).  If the claimant satisfies both requirements of step three, the Commissioner will find that he or she is disabled without regard to his or her age, education, and work experience.  *Id.* §§404.1520(d), 416.920(d).

If the claimant does not have the severe impairment required by step three, the Commissioner's analysis proceeds to steps four and five.  Before doing so, the Commissioner must "assess and make a finding about [the claimant's] residual functional capacity ["RFC"] based on all the relevant medical and other evidence" in the record.  *Id.* §§404.1520(e), 416.920(e).  RFC "is the most [the claimant] can still do despite [his or her] limitations."  *Id.* §§404.1545(a)(1), 416.945(a)(1).  The Commissioner's assessment of the claimant's RFC is then applied at steps four and five.  At step four, the Commissioner "compare[s] [the] residual functional capacity assessment . . . with the physical and mental demands of [the claimant's] past relevant work."  *Id.* §§404.1520(f), 416.920(f).  If, based on that comparison, the claimant is able to perform his or her past relevant work, the Commissioner will find that the claimant is not disabled within the meaning of the Act.  *Id.* §§404.1520(f), 416.920(f).  Finally, if the claimant cannot perform his or her past relevant work or does not have any past relevant work, then at the fifth step the Commissioner considers whether, based on the claimant's RFC, age, education, and work experience, the claimant "can make an adjustment to other work."  *Id.* §§404.1520(g)(1), 416.920(g)(1).  If the claimant can adjust to other work, he or she is

not disabled.  *Id.* §§404.1520(g)(1), 416.920(g)(1).  If, however, the claimant cannot adjust to other work, he or she is disabled within the meaning of the Act.  *Id.* §§404.1520(g)(1), 416.920(g)(1).

The burden through steps one through four described above rests on the claimant. If the claimant carries his burden through the first four steps, "the burden then shifts to the [Commissioner] to show there is other gainful work in the national economy which the claimant could perform."  *Carroll*, 705 F.2d at 642.

III.    *The ALJ's Decision*

Preliminarily, the ALJ found Plaintiff's date last insured to be December 31, 2013. At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity from January 10, 2007, her alleged onset date, through December 31, 2013, her date last insured.  (Tr. 15).  At step two, the ALJ found that through the date last insured, Plaintiff has the following severe impairments: post-traumatic stress disorder ("PTSD"); degenerative disc disease; arthritis; and general anxiety disorder.  (Tr. 15-16).  At step three, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments through the last-insured date that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (Tr. 16-18).

Prior to proceeding to step four, the ALJ determined that through the date last insured, Plaintiff had the RFC to perform:

> light work as defined in 20 CFR 404.1567(b) except the claimant is able to lift or carry 20 pounds occasionally, and 10 pounds frequently; and she can push/pull at the same amount as she can lift and/or carry. In addition, she can sit, stand or walk up to six hours in an eight-hour workday. The claimant is also limited to simple routine tasks.

(Tr.19-23).

At step four, the ALJ found that through the date last insured, Plaintiff was unable to perform any past relevant work.  (Tr. 22).  At step five, the ALJ found that through the date last insured, there were jobs that existed in significant numbers in the national economy that Plaintiff could have performed.  (Tr. 22-23).  Therefore, the ALJ found that Plaintiff was not disabled from January 10, 2017, the alleged onset date, through December 31, 2013, the date last insured.  (Tr. 24).

IV.     *Plaintiff's Challenge*

Plaintiff argues that the case must be remanded because the ALJ failed to adequately explain the link between the evidence of record and his RFC finding, and instead relied on his own lay judgment.  The Court disagrees.

Plaintiff contends that the RFC finding is unsupported by record evidence because there were no medical opinions rendered from a medical source during the relevant period.[3]  Contrary to Plaintiff's contention, this does not mean that the ALJ relied on "lay opinion" to interpret medical data when making his RFC finding. *Johnson v. Colvin*, 669 F. App'x 44, 46-47 (2d Cir. 2016). Consistent with the Commissioner's regulations, the Second Circuit has affirmed the Commissioner's decisions in cases where the ALJ did not rely on medical source opinion, even in cases where the ALJ did so after rejecting opinions from the claimant's own providers. *See Cook v. Comm'r of Soc. Sec.*, 818 F. App'x 108, 109 (2d Cir. 2020) (summary order) (affirming the Commissioner where the record contained no medical opinion assessing the specific restrictions reflected in the

_____

[3] The Plaintiff previously made an application for DIB but was denied on March 29, 2013.  (Tr. 80-99). Thus, the relevant period in this case is March 30, 2013, to December 31, 2013, the date last insured.

RFC determination, observing that treatment notes were in line with the ALJ's determination); *Corbiere v. Berryhill*, 760 F. App'x 54, 56 (2d Cir. 2019) (affirming where the record included no medical opinion speaking to physical functioning); *Wright v. Berryhill,* 687 F. App'x 45, 48-49 (2d Cir. April 14, 2017) (same); *Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5, 7 (2d Cir. Jan. 8, 2017) (affirming where the ALJ rejected the only medical opinion in the record speaking to mental functioning – a treating doctor's opinion); *see also Matta*, 508 F. App'x at 56 ("Although the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, he was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole."). *Corbiere* is especially instructive. In that case, the Second Circuit found that the ALJ cited substantial evidence by referencing the normal and mildly abnormal findings of record. *Corbiere,* 760 F. App'x at 56.

Here, objective findings during the relevant period showed that although Plaintiff complained of chest and back pain, she had full range of motion throughout the extremities and normal neurologic findings. (Tr. 314, 318, 321, 327, 350, 367, 376, 419, 689, 694, 696, 703). Although Plaintiff complained of anxiety, she denied suicidal or homicidal ideations. (Tr. 313-14, 351, 359). Plaintiff was cooperative and had full orientation, logical thoughts, clear speech. (Tr. 313-14, 319, 321, 350, 359, 366, 376, 412, 419, 689, 694, 697).

The ALJ found treating physician Dr. Katherine Eisenberg's retrospective opinion not persuasive. (Tr. 20). Dr. Eisenberg, who met Plaintiff in July 2020, opined that Plaintiff was incapable of even "low stress" jobs; was unable to walk any city blocks; could sit at least six hours but stand/walk less than two hours; could occasionally lift less than ten

pounds; rarely lift or carry ten pounds; could never twist, rarely stoop and climb stairs; and never crouch, squat, or climb ladders, and that Plaintiff suffered from these symptoms since 2007. (Tr. 725-28). The ALJ found that Dr. Eisenberg's retrospective opinion was inconsistent with the contemporaneous physical and psychiatric treatment notes. (Tr. 20). Again, treatment notes showed that Plaintiff had full range of motion throughout the extremities, normal neurologic findings, and generally unremarkable mental status findings. (Tr. 313-14, 318-19, 321, 327, 350, 359, 366-67, 376, 412, 419, 689, 694, 696, 703). The Second Circuit has held that a retrospective opinion of disability must be evaluated in terms of whether "it is predicated upon a 'medically acceptable clinical diagnostic technique' and whether 'considered in the light of the entire record, it establishes the existence of a 'physical impairment' prior to [the date that the doctor began treating plaintiff]." *Vitale v. Apfel*, 49 F.Supp.2d 137, 143 (E.D.N.Y. 1999) (finding that the ALJ reasonably rejected a retrospective opinion because the doctor did not begin treating the plaintiff until after the relevant period and the opinion was not based on any medical findings from the relevant period); *Dousewicz v. Harris, Secretary of Health, Education, and Welfare*, 646 F.2d 771, 774 (2d Cir. 1981)(quoting *Stark v. Weinberger*, 497 F.2d 1092, 1097 (7th Cir. 1974)); *Gonzalez v. Apfel*, 61 F.Supp. 2d 24, 31 (S.D.N.Y. 1999)(the ALJ reasonably concluded that the retrospective opinions were contradicted by substantial evidence, which showed only sporadic contact with mental health facilities).

For similar reasons, the ALJ found Nurse Practitioner ("NP") Marilyn "Lyn" Sullivan's May 2021 opinion not persuasive. (Tr. 21, 734-39). NP Sullivan reported that someone in her practice saw Plaintiff in 2011 for psychotherapy and medication to treat symptoms of PTSD related to a 2007 motor vehicle accident. (Tr. 629). She stated that

Plaintiff exhibited no symptoms of bipolar disorder during her treatment. Plaintiff was not seen again until February 2020 and her mood normalized with treatment. (Tr. 629). Treatment notes in July 2020 showed that Plaintiff related easily and had full orientation, intact memory, coherent and logical thoughts, and improved insight and judgment. (Tr. 630). In May 2021, NP Sullivan opined that Plaintiff was seriously limited in her ability to do unskilled, semiskilled, and skilled work; seriously limited in her ability to travel in unfamiliar places and use public transportation; and would be absent more than four days per month because of her conditions. (Tr. 737-39). As highlighted by the ALJ, NP Sullivan's opinion related to a period in which she did not treat Plaintiff and was based on Plaintiff's subjective reports. (Tr. 21). Therefore, the ALJ found NP Sullivan's opinion not persuasive. (Tr. 21). *See Ratliff v. Barnhart*, 92 F.App'x 838 (2d Cir. Mar. 18, 2004). (An ALJ may discount an opinion from a claimant's own provider when the opinion is based solely on claimant's representations rather than first-hand observations.).

Contrary to Plaintiff's assertion otherwise, it was not incumbent on the ALJ to obtain a retrospective opinion relating to the relevant period from one of Plaintiff's providers. The Second Circuit has declined to require an ALJ to solicit a retrospective opinion from a claimant's provider. *Perez v. Chater*, 77 F.3d 41, 48 (2d Cir. 1996). Nor was it incumbent on the ALJ to obtain the testimony of a medical expert relating to the relevant period. Medical expert testimony is not required in every case. The decision to seek additional medical opinion testimony is left to the ALJ's discretion. *See* 20 C.F.R. § 404.1513a(b)(2) ("Administrative law judges may also ask for medical evidence from expert medical sources."). If the ALJ finds that the evidence of record is already sufficient to make a decision on the claim, he is under no obligation to seek out expert testimony.

*See Perez v. Chater*, 77 F.3d at 48 (finding ALJ had no duty to seek out additional evidence from the claimant's providers where the evidence of record was already sufficient to allow the ALJ to make a decision); *see also Rosa v. Callahan*, 168 F.3d 72, 29 n. 5 (2d Cir. 1999) ("Where there are no obvious gaps in the administrative record, and where the ALJ already possesses a complete medical history, the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim."); 20 C.F.R. § 416.920b(a) (if there is sufficient evidence for the ALJ to determine whether a claimant is disabled, the ALJ will make his decision based on that evidence). Put simply, the courts have never recognized a duty upon the Commissioner to secure evidence affirmatively establishing disability. *See* 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. §§ 404.1512(a), 404.1545(a)(3) ("In general, you are responsible for providing the evidence we will use to make a finding about your residual functional capacity."); *see also Bowen v. Yuckert,* 482 U.S. 137, 149-50 (1987). The ALJ was under no obligation to seek additional information here, where the record contained complete treatment notes and reports of examinations from examining sources upon which the ALJ carefully evaluated and relied on in support of the decision finding Plaintiff not disabled and rejecting her claim for benefits.

While NP Shirley Rast reported that Plaintiff exhibited tenderness in the left knee and sternal tenderness (Tr. 889), treatment notes also showed that Plaintiff ambulated independently with no assistive devices and she did not have joint edema. (Tr. 889, 896). Plaintiff's straight leg raising test was negative bilaterally. (Tr. 905, 911). The fact that the record contains some positive findings or opinions does not undermine the ALJ's decision that Plaintiff could do a range of light work where there is also evidence in favor of the

ALJ's decision. The Commissioner's findings of fact must be upheld unless "a reasonable factfinder would *have to conclude otherwise*." *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d at 448 (emphasis in the original). The question is not whether there is substantial evidence to support the plaintiff's position, but whether there is substantial evidence to support the ALJ's decision. *Bonet ex rel. T.B. v. Colvin*, 523 F. App'x 58, 59 (2d Cir. 2013); *see* 42 U.S.C. § 405(g). In March 2013, Plaintiff told NP Rast that she "finally feel like myself for the first time since the accident." (Tr. 888). NP Rast reported that Plaintiff's pain was "well controlled" and she endorsed a "better quality of life." (Tr. 889, 891). She observed that Plaintiff was "warm and engaging" with her youngest child and reported that Plaintiff had improved mood and sleep. (Tr. 889, 895, 903). Plaintiff also reported good pain control with medication. (Tr. 890, 894, 898). NP Rast also reported that Plaintiff was pleasant and had full orientation and clear speech. (Tr. 890, 894, 910).

Plaintiff's activities of daily living also support the ALJ's RFC finding. During the relevant period, Plaintiff performed light chores, cared for her 11 and 12-year-old children, read, drove, and socialized with friends. (Tr. 48-49, 56-57). *See Poupore*, 566 F.3d at 307 (evidence that Poupore cared for an infant, watched television, read, used the computer, and occasionally drove, vacuumed, and washed dishes, supported ALJ's finding that Poupore's testimony about his limitations was inconsistent with the evidence); *see also Cichocki v. Astrue*, 729 F.3d 172, 178 (2d Cir. 2013) (ALJ properly considered claimant's reported daily activities in assessing the RFC); *Rivera v. Harris*, 623 F.2d 212, 216 (2d Cir. 1980) (finding that activities such as cooking, sewing, shopping, and washing, even though performed "slowly" and with "an afternoon rest," in conjunction with other evidence, supported RFC); *Galgano v. Comm'r of Soc. Sec.*, No. 18-CV-4409, 2020 WL

2198176, at * 5 (E.D.N.Y. May 6, 2020)(holding that evidence that the claimant cared for his kids (10 and 16), walked his dog, socialized once or twice a week, and sometimes loaded his dishwasher supported ALJ's finding that Plaintiff could perform light work).

Reasonable minds could disagree about the weight of substantial evidence, but, under the deferential standard of review re-affirmed by the Supreme Court in *Biestek*, 139 S. Ct. at 1154, the Commissioner's findings must be affirmed. The Commissioner's findings of fact must be upheld unless "a reasonable factfinder would *have to conclude otherwise*." *Brault*, 683 F.3d at 448 (emphasis in the original). Thus, "[i]f evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld." *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014). In this context, the Commissioner's decision must be affirmed.

Plaintiff contends that the ALJ erred when he did not obtain records from Webster Psychiatry and NP Valerie Northrup. However, the regulations concerning the development of the record, 20 C.F.R. § 404.1512, puts the onus on the claimant to develop the record. In subsection (a), entitled "Your Responsibility," it creates a broad and ongoing burden on claimants to develop the record:

> In general, you have to prove to us that you are blind or disabled. You must inform us about or submit all evidence known to you that relates to whether or not you are blind or disabled. This duty is ongoing and requires you to disclose any additional related evidence about which you become aware. This duty applies at each level of the administrative review process, including the Appeals Council level if the evidence relates to the period on or before the date of the administrative law judge hearing decision.

20 C.F.R. §§ 404.1512(a), 416.912(a). The regulation also situates its definition of "completeness" under the "Your Responsibility" section. 20 C.F.R. § 404.1512(a)(2). The

regulation defines completeness as enough "to allow us to make a determination or decision about whether you are disabled or blind." *Id.*

Referencing 20 C.F.R. § 404.1512, the Agency's rules regarding representation, 20 C.F.R. § 404.1740, indicates it is a representative's "affirmative duty" to develop the record for his client. Representatives must "Act with reasonable promptness to help obtain the information or evidence that the claimant must submit under our regulations, and forward the information or evidence to us for consideration as soon as practicable." 20 C.F.R. § 404.1740(b)(1). Relatedly, representatives must assist the claimant in providing evidence about their medical sources. 20 C.F.R. § 404.1740(b)(2).

HALLEX I-2-5-13 provides that a claimant must inform the agency of "additional relevant evidence." Per the rule, a claimant sufficiently informs the agency of evidence where she "provide[s] information specific enough to identify the evidence (source, location, and dates of treatment) and show that the evidence relates to his or her medical condition…" HALLEX 1-2-5-13(B). If a claimant does not sufficiently inform the ALJ of the evidence, he will not take steps to obtain it. *Id.* When she does, the agency will ask the claimant or their representative to seek it and, if they cannot obtain it despite sufficient effort, seek it herself. HALLEX 1-2-5-13(B), (C).

While Plaintiff claims that the lack of records from Webster Psychiatry and NP Northrup warrants remand, counsel never asked the ALJ for assistance in obtaining these records. (Tr. 35). In fact, at Plaintiff's administrative hearing, Plaintiff's counsel reported that there were no outstanding records and counsel affirmatively stated that he was not asking the ALJ to develop any medical evidence. (Tr. 35). Notably, the administrative record did contain psychotherapy notes from Rochester Regional Health for the period

from January 1, 2007 through January 1, 2014, which encompasses the relevant period. (Tr. 310-621). In addition, at the application stage, Plaintiff did not list Webster Psychiatry or NP Northrup on her disability report as a medical source who may have records relating to Plaintiff's mental condition. (*See* Tr. 252-54). As such, without knowledge of this provider at the application stage, the ALJ was not under an obligation to obtain medical records. 20 C.F.R. § 404.1512(b)(1). Further, in a letter dated 30 days before the hearing, Plaintiff's counsel made the ALJ aware that records were outstanding from Webster Psychiatric, but did not ask the ALJ for any assistance in obtaining the records. (*See* Tr. 304). In fact, counsel stated that her "office has requested the above records and will continue to pursue records by telephone, fax, and/or mail." (Tr. 305). At Plaintiff's hearing, the ALJ advised counsel to "Check with Webster Psychiatry. We have the records from Rochester Regional Health, there in the file." (Tr. 55). Counsel responded, "[A]bsolutely. I will send out a request today for records from Webster Psychiatry back to 2007." *Id.* The ALJ agreed to leave the record open for two additional weeks. (Tr. 56). *See Jordan v. Comm'r of Soc. Sec.,* 142 F.App'x 542, 543 (2d Cir. 2005) (Although an ALJ did not contact a medical source for updated records, the Second Circuit has found no error or failure to develop the record where claimant's counsel volunteered to obtain the records, the ALJ kept the record open to allow supplementation of the record, and claimant did not request the ALJ's assistance in securing additional evidence.). Notably, counsel did not submitted any records from Webster Psychiatry to the Appeals Council, as was her right per 20 C.F.R. § 404.970(b). Nor has she submitted them to this Court, as new and material evidence, as is her right, per 42 U.S.C. 405(g). This suggests that the records are either not available for the period at issue or perhaps not helpful to Plaintiff's case.

An ALJ's duty to develop the record is not limitless. Moreover, the Second Circuit has repeatedly found a record development argument by a claimant less plausible where the claimant, as here, was represented by an attorney and thus presumptively capable of obtaining and submitting evidence. *See Rotolo v. Berryhill*, 741 F. App' x 851, 853 (2d Cir. 2018); *Bushey v. Colvin*, 607 F. App' x 114, 115 (2d Cir. 2015).

## CONCLUSION

For the above reasons, Plaintiff's motion for judgment on the pleadings (Dkt. No. 8) is denied and defendant's motion for judgment on the pleadings (Dkt. No. 10) is granted.

The Clerk of Court shall take all steps necessary to close this case.

**SO ORDERED.**

Dated:      July 16, 2024
            Buffalo, New York

MICHAEL J. ROEMER
United States Magistrate Judge